# EXHIBIT 11

BARBARA SIMON
June 3, 2019

Page 1

```
 1                 UNITED STATES DISTRICT COURT
 2                 EASTERN DISTRICT OF MICHIGAN
 3                       SOUTHERN DIVISION
 4   LAMARR MONSON,
 5              Plaintiff,
 6        vs.              Case No. 2:18-cv-10638-LJM-SDD
 7                         Hon. Laurie J. Michelson
 8   The CITY OF DETROIT, a Municipal
     Corporation of the State of Michigan;
 9   the DETROIT POLICE DEPARTMENT;
     ISAIAH McKINNON, a former Chief of
10   Police of the Detroit Police Department;
     JOAN GHOUGOIAN, a former Commander of
11   the Detroit Police Department,
     BARBARA SIMON, an Investigator of the
12   Detroit Police Department; CHARLES
     BRAXTON, a police Sergeant of the Detroit
13   Police Department; VINCENT CROCKETT, a
     Police Officer of the Detroit Police
14   Department; and JEROME WILSON, a Police
     Officer of the Detroit Police Department,
15   jointly and severally,
                   Defendants.
16   _____
17
18        The Videotaped Deposition of BARBARA SIMON,
19        Taken at 210 East 3rd Street, Suite 212
20        Royal Oak, Michigan,
21        Commencing at 10:14 a.m.,
22        Monday, June 3, 2019,
23        Before Lezlie A. Setchell, CSR-2404, RPR, CRR.
24
25
```



BARBARA SIMON
June 3, 2019

Page 10

```
 1       police reports.
 2  Q.   But how long ago did you conduct this review?
 3  A.   About a week or so, week-and-a-half ago.
 4  Q.   Okay.  How many witness statements did you review?
 5  A.   I believe two or three, two or three I believe.
 6  Q.   Okay.  And do you recall the names of the witnesses?
 7  A.   One just stands out, statement taken from Mr. Monson.
 8  Q.   Okay.  Any other witnesses?
 9  A.   Not as I can recall.
10  Q.   Do you recall the names of the police officers, the
11       reports that you reviewed?
12  A.   I believe Officer Crockett, I believe Crockett.  I
13       don't remember the other officer's name.
14  Q.   Did these -- well, let me just ask you to what extent
15       that these documents refresh your memory regarding the
16       case of The People versus Monson?
17  A.   I remember some of the case.  You know, it's been a
18       long time.  I don't remember everything that happened.
19       It's been years ago --
20  Q.   Right.
21  A.   -- so...
22  Q.   Do you remember being the officer in charge of that
23       particular case?
24  A.   Yes.
25  Q.   Could you -- you made a reference to a statement by
```



BARBARA SIMON
June 3, 2019

Page 22

```
 1        at the scene.
 2   Q.   Okay.  And this document seems to contain notes of
 3        various kinds, seems to be describing the crime scene,
 4        as well as witnesses that they received information
 5        from.  Is that typical of these kinds of documents?
 6                  MR. BERGER:  Objection; foundation.
 7                  THE WITNESS:  Yes, sir.
 8   BY MR. SMITH:
 9   Q.   Now it's my understanding that in the investigation of
10        this particular incident, you were assigned as the
11        officer in charge?
12                  MR. BERGER:  Asked and answered.
13                  THE WITNESS:  Yes, sir.
14   BY MR. SMITH:
15   Q.   And how does that process work; how is one assigned
16        the officer in charge for a particular case?
17                  MR. BERGER:  Are you talking about in 1996
18        or --
19                  MR. SMITH:  In 1996, yes.
20                  THE WITNESS:  Well, it depends.  We had
21        different squads at that time, and say like my squad
22        was up and if I was the next person up for a case,
23        there's several people in that squad, and if your
24        name, if you're up next, then the case will be
25        assigned to you.
```



BARBARA SIMON
June 3, 2019

Page 23

1  BY MR. SMITH:
2  Q.   So it's just an automatic process?
3  A.   That's from one squad to another, yes, sir.
4  Q.   Okay.  So when a call comes in from the field of a
5       possible homicide, then the next person that's up
6       becomes the officer in charge of that case?
7            MR. BERGER:  Mischaracterizes her prior
8       testimony.
9            THE WITNESS:  Well, it depends on what
10      squad is -- you have different squads.  Say like you
11      have a baby squad, so baby squad has different squads,
12      okay, so it all depends on what squad is up at that
13      particular time for a case.
14 BY MR. SMITH:
15 Q.   Okay.  When you say a baby squad --
16 A.   Yes, sir.  We had squads like squad 1 was baby and
17      children's squad.  We had so many -- I think it was
18      about seven squads at that time.
19 Q.   Okay.  So if your squad was up, you'd be assigned the
20      officer in charge?
21 A.   If your name was next, yes, sir.
22 Q.   Okay.  Okay.  In this particular case, if you take a
23      look at the document that we've marked as Exhibit 2,
24      you can see that there are several boxes that are
25      checked unknown for method of entry, method of escape,



BARBARA SIMON
June 3, 2019

Page 160

```
 1   Q.   And why did that make you suspicious, that
 2        information?
 3   A.   Because he didn't want to go to jail for messing
 4        around with a 12-year-old.
 5   Q.   At that time did you have reason to arrest Lamarr
 6        Monson?
 7   A.   At that time it was still under investigation.
 8   Q.   Okay.  But given the information provided you, did you
 9        have, did you have a reason to arrest him for any
10        crimes?
11                  MR. SMITH:  Objection.
12                  THE WITNESS:  Yes.
13   BY MR. BERGER:
14   Q.   What crimes?
15   A.   CSC-1.
16   Q.   Anything else?
17   A.   At that particular time, like I said, everything else
18        was under investigation.
19   Q.   What about the drugs?
20   A.   The drugs, yes.
21   Q.   What is CSC-1?
22   A.   Criminal sexual conduct in the first degree, a person
23        under the, as a minor, under the age of 12, 12 and
24        under, 13 and under, I'm sorry.
25   Q.   I'd like you to look at the Exhibit 17.  Is any of
```

