UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAMARR MONSON,

        Plaintiff,

v.

JOAN GHOUGOIAN, a former Commander
of the Detroit Police Department,
BARBARA SIMON, an Investigator of the
Detroit Police Department; CHARLES
BRAXTON, a Police Sergeant of the Detroit
Police Department; VINCENT CROCKETT,
a Police Officer of the Detroit Police
Department; and JEROME WILSON, a Police
Officer of the Detroit Police Department,
jointly and severally,

        Defendants.

Case No. 18-10638
Hon. Laurie J. Michelson
Mag. David Grand

---

**JOSEPH CONRAD SMITH, P.C.**
By: Joseph C. Smith (P25480)
*Attorney for Plaintiff*
28411 Northwestern Hwy., Suite 960
Southfield, Michigan 48034
P: (313) 859-0229
E: jcsmith@josephconradsmith.com

**SEWARD HENDERSON PLLC**
By: T. Joseph Seward (P35095)
    Michael T. Berger (P77143)
*Attorneys for Defendants and Detroit*
210 East 3rd Street, Suite 212
Royal Oak, Michigan 48067
P: (248) 733-3580
F: (248) 733-3633
E: jseward@sewardhenderson.com
    mberger@sewardhenderson.com

---

## BARBARA SIMON'S RESPONSES TO PLAINTIFF'S REQUESTS TO ADMIT TO BARBARA SIMON

NOW COMES Defendant, BARBARA SIMON, by and through her attorneys and in response to Plaintiff's Second Requests to Admit states as follows:

31.    Please admit that the Christina Brown Homicide File that the City of Detroit produced to plaintiff on June 18, 2018 and Detroit's Corrected First Production of Documents produced to plaintiff on February 5, 2020, are comprised of genuine copies of documents that were generated, received and/or reviewed by the DPD in connection with the Christina Brown Homicide Investigation.

**Answer:**

**Admitted in part and denied in part. Defendant Simon denies that the documents that have been redacted for privilege in the homicide file that was produced to Plaintiff are genuine because of the redactions. She admits that the copies of the documents that are not redacted for privilege and the portions of documents that were produced which are not redacted for privilege, are genuine copies from the homicide file.**

32.   Please admit that, as the Officer-in-Charge of the Christina Brown Homicide Investigation, it was your responsibility to inform the Wayne County Prosecutor assigned to the Christina Brown murder prosecution and/or the defense attorney of all usable latent print evidence found on the blood-stained toilet tank top (242478), which was possibly used to bludgeon Christina Brown on January 20, 1996.

**Answer:**

**Admitted in part and denied in part. Defendant Simon denies that she was the "Officer-In-Charge of the Investigation" because her title was "Officer-In-Charge of the Case" and because the City of Detroit does not use the term "Officer-In-Charge of the Investigation." She also denies that she had the responsibility to inform the defense attorney of all usable latent print evidence found on the blood-stain toilet tank top (242478), which was possibly used to bludgeon Christina Brown on January 20, 1996. She admits that she had the responsibility to provide the Wayne County Prosecutor assigned to the Christina Brown murder prosecution with all usable latent print evidence found on the blood-stain toilet tank top (242478), which was possibly used to bludgeon Christina Brown on January 20, 1996.**

33.    Please admit that, disregarding any markings that do not obscure text,

**Exhibit 1**, pages 55-76, is a genuine copy of the transcript of your

sworn testimony in 36th District Court, during Lamarr Monson's

Preliminary Examination on February 2, 1996.

**Answer:**

    **Admitted.**

34.    Please admit that, disregarding the markings that do not obscure text,

**Exhibit 2**, pages 34-48 and pages 75-117, is a genuine copy of the

transcript of your sworn testimony in Detroit Recorder's Court, during

the trial of *People of the State of Michigan vs. Lamarr Monson*, Case No.

96-1138, on March 4, 1997.

**Answer:**

    **Admitted.**

35.   Please admit that, disregarding any markings that do not obscure text, **Exhibit 3**, pages 4-42, is a genuine copy of the transcript of Dr. Jeff Harkey's sworn testimony in 36th District Court, during Lamarr Monson's Preliminary Examination on February 2, 1996.

**Answer:**

   **Admitted.**

36.   Please admit that on January 20, 1996, you were aware that Lamarr Monson had been transported from 2752 W. Boston to the Homicide Section of the Detroit Police Department without probable cause to believe he had committed a crime.

**Answer:**

   **Defendant Simon lacks the knowledge or information to be able to admit or deny the request. She cannot recall whether she was aware of why Plaintiff had been transported from 2752 W. Boston to the Homicide Section of the Detroit Police Department. Also, a reasonable inquiry was conducted by a review of the homicide file, Defendant Simon's transcripts from the criminal case of *People v Monson*, and Defendant Simon's transcript from this case, but they do not provide Defendant Simon with the sufficient information to be able to admit or deny the request.**

4

37.   Please admit that **Exhibit 4** is a genuine copy of a two-page Witness

Statement, Bates numbered 00311-00312 and produced to plaintiff as

part of Detroit's First Production of Documents, which was written out

by Sgt. Laverne Gallant, based on information provided by Linda

Woods, and which you relied upon in preparing your Investigator's

Report to the Wayne County Prosecutors Office.

**Answer:**

   **Admitted.**

38.   Please admit that neither Detroit's First Production of Documents nor

Detroit's Corrected First Production of Documents contain any

documents, other than **Exhibit 4**, that support Linda Woods' claim that

she saw Mr. Monson enter the building located at 2752 W. Boston at

7:30 a.m. on January 20, 1996 and leave 45 minutes later.

**Answer:**

   **Admitted.**

39.  Please admit that, disregarding any markings that do not obscure text,

**Exhibit 5**, pages 45-112, is a genuine copy of the transcript of the sworn

testimony given by Linda Woods in Detroit Recorder's Court, during

Lamarr Monson's criminal jury trial, *People of the State of Michigan vs.*

*Lamarr Monson*, Recorder's Court case No. 96-1138, on March 3, 1997.

**Answer:**

**Admitted.**

40.   Please admit that on or about February 7, 1996, you obtained a cassette of Lamarr Monson's 911 call that was placed on 1402 or 1403 hours on January 20, 1996, requesting assistance at 2752 W. Boston #A7.

**Answer:**

**Defendant Simon lacks the knowledge or information to be able to admit or deny the request in part. First, Defendant Simon lacks the knowledge to know whether LaMarr Monson made a 911 call on 1402 or 1403 (i.e. 2:02pm or 2:03pm) because a recording of 911 calls to the City of Detroit has not been able to be located. She also lacks the knowledge to determine whether she obtained a copy of a cassette of 911 calls on January 20, 1996 at 1402 or 1403 hours because she does not recall whether she did. A reasonable inquiry into this issue has been conducted by a review of the homicide file. In the homicide file, only an inter-office memorandum and a photograph of a cassette from January 20, 1996 at 1402 or 1403 hours could be found. The memorandum does not make it clear whether Defendant Simon received the cassette in response to her request. It also is not clear whether she ever received an actual copy of the cassette, just a photograph of the cassette, or whether the photograph of the cassette was placed in the homicide file after she stopped work on the Christina Brown homicide case.**

41.   Please admit that, prior to Lamarr Monson's criminal jury trial in March of 1997, you never provided plaintiff's attorney or the Wayne County Prosecutors Office with copies of the cassette recording of Mr. Monson's 911 call that was placed at 1402 or 1403 hours on January 20, 1996, requesting assistance at 2752 W. Boston #A7.

**Answer:**

**Defendant Simon lacks the knowledge or information to be able to admit or deny the request. As explained above in the response to #40, she does not have knowledge of whether Lamarr Monson made a 911 phone call to 911 at 1402 or 1403 on January 20, 1996. She also cannot recall whether she ever received a 911 cassette of a phone call made by LaMarr Monson to 911 at 1402 or 1403 on January 20, 1996 in response to her request for one or whether she provided a copy of such a cassette to Plaintiff's attorney or the Wayne County Prosecutor's Office. A reasonable inquiry has been conducted by searching for the cassette, but it has not been found. A review of the prosecutor's file was also conducted and that does not indicate whether the prosecutor's office received any 911 phone call cassettes of a 911 call made by Mr. Monson on January 20, 1996.**

8

42.    Please admit that **Exhibit 6** is a genuine copy of a Witness Statement, Bates numbered 00250-00254 and produced to plaintiff as part of Detroit's First Production of Documents, which was based on information provided by Robert Lewis (aka "Raymond Lewis" and "R. Lewis") on January 20, 1996, after he was transported from 2752 W. Boston to the DPD Homicide Section.

**Answer:**

   **Admitted.**

43.    Please admit that, based upon his Witness Statement (**Exhibit 6**), Robert Lewis (aka "Raymond Lewis" and "R. Lewis") was a res gestae witness within the meaning of MCL 767.40a(1) and (2); *People vs. Carter*, 415 Mich 558, 591-591 (1982) and *People vs. Hadley*, 67 Mich. App. 688, 690 (1976).

**Answer:**

   **Denied.**

44.  Please admit that, neither your Investigator's Report, attached hereto as **Exhibit 7**, nor any amendment or supplement to that report, make any reference to the observations of Robert Lewis (aka, "Raymond Lewis" and aka "R. Lewis") at the crime scene on January 20, 1996, as documented in his Witness Statement (**Exhibit 6**).

**Answer:**

**Admitted.**

45.  Please admit that **Exhibit 8** is a genuine copy of an excerpt (pages 1-3 and pages 30-34) from the deposition of Detective Patricia Little that was taken in this case on August 14, 2019.

**Answer:**

**Admitted.**

46.   Please admit that **Exhibit 9** is a genuine copy of Progress Notes, Bates numbered 00226 and 00228 and produced to plaintiff as part of Detroit's First Production of Documents, which were handwritten by you, in connection with the Christina Brown Homicide Investigation.

**Answer:**

   **Admitted.**

47.   Please admit that **Exhibit 10** includes genuine copies of the Request for Laboratory Services, Bates numbered 0095, which was produced to plaintiff as part of Detroit's Corrected Response to First Production of Documents; and Requests for Laboratory Services, Bates numbered 006; 008; and 009, which were produced to plaintiff as part of Defendants' Second Supplemental Initial Disclosures

**Answer:**

   **Admitted.**

48.   Please admit that **Exhibit 11** is a genuine copy of the Laboratory
      Analysis Report prepared by Charles Urbanczyk (now deceased),
      Bates numbered 00364 and produced to plaintiff as part of Detroit's
      First Production of Documents, that was completed pursuant to your
      Request for Laboratory services set forth in **Exhibit 10**.

**Answer:**

      **Admitted.**


49.   Please admit that **Exhibit 12** is a genuine copy of the Laboratory
      Analysis Report prepared by M. Scarpetta and P. Lytle, Bates
      numbered 0365-0369 and produced to plaintiff as part of Detroit's
      Corrected First Production of Documents, which was completed
      pursuant to your Request for Laboratory Services set forth in **Exhibit
      10.**

**Answer:**

      **Admitted.**

50.    Please admit that the Serology testing conducted by the DPD crime laboratory prior to the criminal jury trial in *People of the State of Michigan vs. Lamarr Monson*, Recorders Court case No. 96-1138, did not implicate Lamarr Monson as the possible murderer of Christina Brown.

**Answer:**

    **Admitted.**

51.    Please admit that **Exhibit 13** consists of genuine copies of photographs and negatives, Bates numbered 052, 069, 079, and 097, which were produced to plaintiff in response to plaintiff's Subpoena to the City of Detroit, dated May 20, 2019.

**Answer:**

    **Admitted, but please note that the documents attached as Exhibit 13 are poorer quality versions of what the City produced.**

52.    Please admit that **Exhibit 14** is a genuine copy of a document, Bates

numbered 075, which was produced to plaintiff by the City of Detroit

in response to plaintiff's Subpoena to the City of Detroit, dated May

20, 2019.

**Answer:**

**Denied because Bates number 075 is not the complete document.
Bates number 075 is an attachment to an email from a Xerox machine
that is Bates number 074.**

53.    Please admit that **Exhibit 15** is a genuine copy of a photograph, Bates

numbered 0414, produced to plaintiff as part of Detroit's Corrected

First Production of Documents, depicting the kitchen knife taken from

the crime scene and identified by Evidence Tag #242481.

**Answer:**

**Admitted.**

54. Please admit that **Exhibit 16** is a genuine copy of Receipt No. U9601240088, Bates numbered 00102, and produced to plaintiff as part of Detroit's First Production of Documents, which reflects that you received and signed for nine (9) items of evidence, pertaining to the Christina Brown investigation, at 1235 hours on February 06, 1996.

**Answer:**

   **Admitted.**

55. Please admit that **Exhibit 17** is a genuine copy of Receipt No. U9602060119, Bates numbered 00103 and produced to plaintiff as part of Detroit's First Production of Documents, which accurately reflects that you returned nine (9) items of evidence, pertaining to the Christina Brown investigation, to Officer Kenneth Danner of the DPD Property Section, at 1259 hours on February 6, 1996.

**Answer:**

   **Denied because the document reflects that Defendant Simon returned seven items from the Christina Brown Homicide Investigation (E242465, E242477, E242480, E242483, E242484, E242485, and E242486) and two others are from a different case (E248905 and E248907).**

56.   Please admit that **Exhibit 18** is a genuine copy of one side of an Arrest Card (Sections D thru G), which was required by state law to be completed by the DPD and submitted to the Michigan State Police in conjunction with the arrest of Lamarr Monson for the murder of Christina Brown, but which was not produced to plaintiff as part of the City of Detroit's First Production of Documents or Detroit's First Production of Documents.

**Answer:**

   **Admitted.**

57.   Please admit that **Exhibit 19** consists of genuine copies of the following Sections of DPD General Procedures, Volume III, Chapter 1, which were produced as part of Detroit's Response to ECF 125: Section 7, **Arrest Defined**, (Bates numbered 007); Sections 15 and 16, **Arrests Without a Warrant-General**" and "**Arrests On Probable Cause** (Bates numbered 008); Section 4.5, **Miranda Warnings** (Bates numbered 014).

**Answer:**

   **Admitted.**

58.   Please admit that the General Procedures set forth in **Exhibit 19** were known to you as policies of the Detroit Police Department that were in effect on January 20, 1996.

**Answer:**

   **Admitted.**

59.   Please admit that **Exhibit 20**, is a genuine copy of the 149-page deposition transcript of the sworn testimony of Cynthia Stewart, who testified on January 17, 2020, pursuant to a subpoena issued by your attorneys in the instant case.

**Answer:**

   **Admitted.**

60.   Please admit that **Exhibit 21** is a genuine copy of what purports to be a "Witness Statement," Bates numbered 00275-00278, and produced to plaintiff as part of Detroit's First Production of Documents, which was handwritten by you; dated January 20, 1996, at 5:45 p.m.; and which purports to include the signature "Paris Tomson" on the bottom of each page.

**Answer:**

> **Admitted in part and denied in part. Defendant Simon admits that the witness statement was written by her, except the signatures which state "Paris Tomson" which were placed there by Cynthia Stewart. Thus, she denies that the parts that state "Paris Tomson" are her handwriting or that it "purports" to be a signature of "Paris Tomson" because it is the handwriting of Cynthia Stewart.**

Respectfully submitted,

SEWARD HENDERSON PLLC

/s/ Michael T. Berger (P77143)
*Attorneys for Defendants*
210 East 3rd Street, Suite 212
Royal Oak, Michigan 48067
P: (248) 733-3580
F: (248) 733-3633
E: mberger@sewardhenderson.com

Dated: April 21, 2020

## PROOF OF SERVICE

I hereby certify that on **Tuesday, April 21, 2020**, I served the foregoing document and this Proof of Service on all counsel of record via First Class Mail and email.

<div style="margin-left: 40%;">

/s/ Fatten Saad
**SEWARD HENDERSON PLLC**
210 East 3rd Street, Suite 212
Royal Oak, MI 48067
P: (248) 733-3580
F: (248) 733-3633

</div>

Dated: April 21, 2020                  E: fsaad@sewardhenderson.com



SEWARD HENDERSON PLLC

Michael T. Berger
mberger@sewardhenderson.com

April 21, 2020

*Via First Class Mail & Email*

Joseph C. Smith, Esq.
**Joseph Conrad Smith, P.C.**
28411 Northwestern Highway
Suite 960
Southfield, MI 48034

Re:     *Lamarr Monson v. Joan Ghougoian, et al.*
        Case No.  18-10638

Dear Mr. Smith:

        Enclosed please find Defendant, Barbara Simon's Response to Requests to Admit to Barbara Simon.

        If you have any questions, comments, or concerns, please feel free to contact me.

        Very truly yours,

        **Seward Henderson PLLC**

        Michael T. Berger

MTB/ads
**Enclosure**

cc:     Lateesa Ward, Esq. (email only)



210 East 3rd Street, Suite 212, Royal Oak, Michigan 48067
**P** 248.733.3580 **F** 248.733.3633  www.sewardhenderson.com