UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| LAMARR MONSON,<br><br>    Plaintiff,<br><br>v.<br><br>JOAN GHOUGOIAN, *et al.*,<br><br>    Defendants. | Case No. 18-10638<br>Honorable Laurie J. Michelson |

### OPINION AND ORDER GRANTING PLAINTIFF'S MOTION IN LIMINE TO PRECLUDE DEFENDANTS FROM INTRODUCING THE SHOWER-WALL PRINTS [231]

In 1996, Christina Brown was killed in the bathroom of an apartment that she sometimes shared with plaintiff Lamarr Monson. (ECF No. 231, PageID.10965.) Monson "confessed" and was convicted of her murder. (*Id.* at PageID.10966.) But years later —with the discovery of exculpatory evidence and the help of the Michigan Innocence Clinic—a state judge granted Monson a new trial. The prosecutor's office declined to retry Monson, and the state judge then dismissed the case. Monson was released in 2017 after serving more than 20 years in prison.

Monson then filed this lawsuit, alleging that various Detroit Police Officers violated his constitutional rights during the murder investigation and trial. After extensive motion practice and more than three years of discovery, Monson now asks this Court to exclude certain finger- and palmprint evidence from the crime scene (tagged ET# 242490). This print evidence was not utilized in the underlying criminal

case but was matched to Monson during the course of this civil litigation. Monson argues that the prints are irrelevant and would be unfairly prejudicial.

For the reasons that follow, the Court agrees and GRANTS his motion.

## I.

The two prints at issue here were identified and lifted by an evidence technician at the crime scene in 1996. (ECF No. 231-2, PageID.10994.) The Evidence Technician Report and Latent Print Cards indicate that the prints were lifted from the "bathroom wall north side of south shower wall east end" and the "bathroom wall south shower wall east side." (*Id.* at PageID.10993; ECF No. 231-11, PageID.11039–11040.)



2

(*See* ECF No. 231-2, PageID.10995 (red annotations added); ECF No. 232-13, PageID.11263.)

Beyond that vague description, the exact location and origin of the shower-wall prints are unclear. While the Evidence Technician Report referenced measurements of the scene, the City of Detroit "has not located" any. (ECF No. 231-10, PageID.11037.) And the record provides no "overall" photos of the shower wall showing where the prints were located.[1] Moreover, the technician who lifted the prints has died, and the other technician has no knowledge of where the prints were found. (ECF No. 231, PageID.10976; ECF No. 231-9, PageID.11033.) It is also not clear when the prints were made because Monson admits that he "frequented the apartment" in the weeks before Brown's murder. (ECF No. 231, PageID.10973.) And Defendants' latent print examiner agreed that he "cannot determine when a print impression was deposited on a surface." (ECF No. 231-7, PageID.11020.)

In any case, no efforts were made to match these prints to Monson (or anyone else) during the murder trial. (ECF No. 231, PageID.10966.) Instead, Monson was convicted based primarily on (1) a different fingerprint lifted from the bathroom mirror that matched his and (2) a confession that he now claims was fabricated by a

---

[1] Defendants provided the Court with a crime scene photo with a circle around the area where they believe the prints originated, namely near the bottom of the south shower wall near blood smears. (ECF No. 232, PageID.11164.) They cite the testimony of Monson's architectural expert, Mark Monteith, to support this conclusion. However, Monteith testified that he "wasn't given any information to go on regarding the height that they were taken from." (ECF No. 232-14, PageID.11267.) So, without more explanation, it seems that the prints could have been lifted from anywhere on the vertical plane of that wall, and the circled area in the photograph is conjectural, as Monson points out. (ECF No. 236, PageID.12016.)

3

Defendant. (*Id.*; ECF No. 187, PageID.8909.) Monson "confessed" to stabbing Brown in self-defense and to pushing her head through the bathroom window. (ECF No. 232-7, PageID.11229.) But the medical examiner at Monson's preliminary examination testified that Brown was actually killed by blunt force trauma to the head caused by a heavy object, and not by being stabbed or pushed through a window. (ECF No. 231-14, PageID.11113–11115.)

Brown's true cause of death was crucial to Monson's eventual release from prison. In 2012, Monson's former neighbor from the apartment building where Brown was killed told the Detroit Police Department that her ex-boyfriend, Robert Lewis, had killed Brown. (ECF No. 231-16, PageID.11124 ("He came back to my apartment . . . his clothes were bloody . . . [And] he told me that he had to kill that bitch[.]").) The DPD then matched several fingerprints on a toilet tank lid found at the crime scene to Lewis. (ECF No. 231, PageID.10966.) It was this exculpatory evidence that eventually led to Monson's release. (*Id.*)

It was not until 2019—after Monson's release and the filing of this suit—that the shower-wall prints at issue here were matched to Monson. (ECF No. 231, PageID.10968; ECF No. 168, PageID.7658 (sealed).) Despite playing no part in Monson's underlying criminal trial, Defendants seek to introduce Monson's shower-wall prints at trial. (*See* ECF No. 231-6, PageID.11015.)

So Monson filed this motion to exclude them. (ECF No. 231.) Defendants responded, arguing that the prints tend to disprove (1) Monson's claim that his confession was fabricated, (2) Monson's *Brady* claim that the shower-wall prints were

4

exculpatory, (3) Monson's malicious-prosecution claim because the prints provided probable cause, and (4) Monson's claims that the lifts from the toilet tank lid are entitled to "greater significance" than other latent print evidence. (ECF No. 232, PageID.11166–11171.) Monson replied, arguing that Defendants had "distort[ed] and misrepresent[ed] the relevancy" of the shower-wall prints. (ECF No. 236, PageID.12014.)

Given the clear briefing and record, the Court considers the motion without further argument. *See* E.D. Mich. LR 7.1(f). The Court finds that whatever limited probative value these prints might have is substantially outweighed by the risk of unfair prejudice and jury confusion. So Monson's motion is granted.

## II.

Under the Federal Rules of Evidence, all relevant evidence is admissible. Fed. R. Evid. 402. The rules define "relevant evidence" as evidence having any tendency to make the existence of any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed. R. Evid. 401. The Supreme Court has noted on several occasions that the standard for relevancy is liberal. *See, e.g., Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 587 (1993); *Churchwell v. Bluegrass Marine, Inc.*, 444 F.3d 898, 905 (6th Cir. 2006) (noting same).

However, even relevant evidence may be excluded if its "probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury . . . or needlessly presenting cumulative evidence." Fed. R. Evid.

5

403. "Unfair prejudice does not mean the damage to a [party's] case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest [a] decision on an improper basis[,]" including an emotional one. *United States v. Howard*, 621 F.3d 433, 457 (6th Cir. 2010); *United States v. Whittington*, 455 F.3d 736, 739 (6th Cir. 2006). "[T]he district court has 'very broad discretion' in balancing prejudice and probative value." *United States v. Ledbetter*, 929 F.3d 338, 363 (6th Cir. 2019) (quoting *United States v. Mack*, 258 F.3d 548, 555 (6th Cir. 2001)).

### A.

The Court will first consider the potentially relevant uses of this evidence and then turn to 403 balancing.

### 1.

Defendants first argue that the shower-wall prints are relevant to Monson's claim that Defendant Charles Braxton fabricated the confession he typed up for Monson to sign. (ECF No. 232, PageID.11168.) To make such a claim, Monson must show (among other things) that Braxton "stated a deliberate falsehood or showed reckless disregard for the truth." *Gregory v. City of Louisville*, 444 F.3d 725, 758 (6th Cir. 2006).

Defendants argue that the prints tend to show that Monson did in fact push Brown's head through the window. (ECF No. 232, PageID.11168.) Defendants refer to Monson's complaint to suggest that the shower wall and the window are close to one another, and the prints suggest that he touched the shower wall when he pushed Brown's head out the window. (*Id.*) Defendants' theory was more clearly presented in

6

their interrogatory responses: "Defendants contend that Plaintiff braced himself on the shower wall, near the broken window, to smash Christina Brown's head into the wall and window area. Thus, the witness statement Officer Braxton provided . . . was not fabricated because it is consistent with the physical evidence." (ECF No. 231-6, PageID.11014.)

For a few reasons, the prints do little to show that Monson's confession was true. First, the confession did not say that Monson braced himself against the shower wall. Instead, it says Brown "charged at me with the knife . . . I then grabbed her arm near her forearm and put the other hand to her neck and pushed her head through the window in the bathroom breaking the glass . . . [Brown] came after me with the knife in her hand again and I grabbed her arm and pushed her back towards the window again." (ECF No. 232-7, PageID.11229.) Nothing in the confession suggests that Monson even touched, let alone braced himself against, the shower wall during an assault on Brown. Indeed, when it describes pushing Brown through the window, it says that both of Monson's hands were on Brown's body.

Second, Monson's "access to the subject apartment is uncontested and admitted." (ECF No. 231, PageID.10972.) In fact, a print lifted from the bathroom mirror was matched to Monson back in 1996. (ECF No. 187, PageID.8909; ECF No. 232, PageID.11169.) So without more information about when or where these particular prints were deposited, these prints do little to show that they were deposited during Brown's murder or that they were at an appropriate height to

7

"brace" Monson.[2] So the prints have minimal relevance for this purpose, other than to show the uncontested fact that Monson was in the bathroom at some point before or during the murder.

### 2.

Defendants next argue that the shower-wall prints "disprove Monson's [*Brady v. Maryland*, 373 U.S. 83 (1963)] claims that the latent print evidence taken from the crime scene was exculpatory" but never turned over to the defense. (ECF No. 232, PageID.11166.) One element of a *Brady* claim is that "[t]he evidence . . . must be favorable to the accused, either because it is exculpatory, or because it is impeaching[.]" *Carter v. City of Detroit*, 678 F. App'x 290, 293 (6th Cir. 2017) (citing *Strickler v. Greene,* 527 U.S. 263, 281–82 (1999)).

Defendants argue that because the prints were eventually revealed to be Monson's, they were not favorable. And if they were not favorable, Defendants did not have to turn them over under *Brady*. (ECF No. 232, PageID.11166.)

But, as Monson points out, he is not claiming that the failure to disclose the shower-wall prints violated *Brady*. (ECF No. 236, PageID.12015.) His complaint makes clear that his claim is that one of Defendants "failed to inform the Prosecutor's Office, or Monson's attorney that usable fingerprints, which did not match Monson's

---

[2] The Court notes that the crime scene photo provided by Defendants cuts against the "bracing" theory. (*See* ECF No. 232, PageID.11164.) That photo includes a circle around the area near the bottom of the shower wall where they believe the prints originated. But it would make no sense for Monson to have braced himself against the north or east side of the south shower wall at ankle-height to push Brown's head out the window. Instead, this inconsistency merely underscores that no one has shown when or where the prints were deposited.

8

fingerprints, had been lifted from the crime scene *toilet tank top (the probable murder weapon)*" and that the same Defendant "failed to inform the Prosecutor's Office that a partial print, impressed in what appeared to be blood *on the toilet tank top . . .* contained a distinctive 'whorl pattern' that was sufficient to exclude Monson as the person who left the print impression." (ECF No. 187, PageID.8945–8946 (emphases added).) So Monson's *Brady* claim only includes prints that "did not match" him on the toilet tank lid.

Given that the shower-wall prints are not part of Monson's *Brady* claim, they do nothing to disprove Monson's claim that the prosecution withheld exculpatory evidence from the defense. Simply put, no one believes these prints are exculpatory, and they thus have no relevance to Monson's *Brady* claim.

### 3.

Defendants also claim that the shower-wall prints discount Monson's malicious-prosecution claim. (ECF No. 232, PageID.11168.) One element of this claim is the absence of probable cause for the criminal prosecution. *See Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010). As Defendants acknowledge, probable cause is evaluated "from the perspective of the officer *at the time of the incident*." (ECF No. 232, PageID.11168 (citing *United States v. Copeland*, 321 F.3d 582, 592 (6th Cir. 2003) (emphasis added).).

Defendants suggest that the prints "provided probable cause to believe Monson was present at the time the crime was committed." (ECF No. 232, PageID.11169.) But as explained in detail above, there is no evidence to suggest that the prints were

9

deposited "at the time the crime was committed." Defendants' own expert agreed that he "cannot determine when a print impression was deposited on a surface." (ECF No. 231-7, PageID.11020.) More importantly, the officers did not know these were Monson's prints at the time of his prosecution in the 1990s because they were not matched to Monson until more than 20 years after the murder. So the prints did not and could not factor into any probable cause determination at the time of Monson's arrest or prosecution, and they have no relevance for this purpose.

4.

Finally, Defendants argue that the prints are "relevant to dispute Monson's claims that Lewis's prints are entitled to greater significance than his own prints." (ECF No. 232, PageID.11169–11171.) They continue, "Monson's Second Amended Complaint alleges that Lewis' latent fingerprints found on the toilet tank lid are of 'greater significance' than other print evidence." (*Id.*) But, say Defendants, "[t]he Bathroom Wall [prints] are relevant to determine what significance, if any, should be attached to Lewis' prints on the toilet tank lid, versus Monson's prints on other surfaces of the crime scene." (*Id.* at PageID.11165.) In addition, Defendants add, "Monson's prints on the Bathroom Wall and claim that his own prints could have been left before or after the murder, tends to prove that Lewis's prints also could have been left before or after the murder." (*Id.* at PageID.11170.)

The paragraph of the complaint that Defendants reference states in relevant part: "Latent Print Examiner, Marcia M. Puckett identified the single print taken [from] the bathroom mirror (Evidence Tag #242489) as belonging to Mr. Monson. This

10

finding was not incriminating because Monson was known to have frequented the apartment. Of greater significance was the examination of the print lifts from the bloody toilet tank top (Evidence Tag #242491), which was the probable murder weapon. Neither of the latent fingerprint lifts from the toilet tank top were matched to Monson." (ECF No. 187, PageID.8909 (emphasis omitted).) The Court reads this only for the seemingly uncontroversial proposition that a print on a benign surface left by a sometime-resident of the apartment is less inculpatory than a print by a relative stranger with limited access to the crime scene on the probable murder weapon. Moreover, this has nothing to do with the shower wall prints. Defendants do nothing to explain what this assertion—which discussed the relative significance of prints known to the police during the murder investigation—has to do with the shower-wall lifts, which, again, were not associated with Monson until decades later.

The relevance of the shower-wall prints for this purpose is unclear for another reason. To be relevant, evidence must relate to a fact that "is of consequence in determining the action." Fed. R. Evid. 401(b). In other words, relevant evidence must at least be "a step on one evidentiary route to the ultimate fact." *United States v. Hazelwood*, 979 F.3d 398, 409 (6th Cir. 2020) (quoting *Old Chief*, 519 U.S. at 179). But Monson's statement about the relative significance of the prints is contained in the "General Averments" section of the complaint. More specifically, it is under the subheading relating to Monson's *Brady* claim. (ECF No. 187, PageID.8908 ("Defendant Simon's Suppression of Fingerprint Evidence from the Toilet Tank Top.").) But as explained at length above, the shower-wall prints are not part of

11

Monson's *Brady* claim. True, the toilet-tank prints are part of the *Brady* claim. This claim has three elements: "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). Whether the toilet-tank prints are exculpatory is a separate issue from whether there was other inculpatory evidence against Monson. *See United States v. Tavera*, 719 F.3d 705, 710 (6th Cir. 2013) ("Fundamental guarantees of due process require the government to provide defendants with evidence it possesses that is exculpatory and material to the defense."). So even if the Court were to permit Defendants to admit the shower-wall prints to allow the jury to evaluate the relative significance of various prints, Defendants never say what "ultimate fact" this would help prove or what element, claim, or defense it would be relevant to.

Perhaps in an effort to bolster the relevance of the shower-wall prints, Defendants imply that they were impressed in blood. They say that "Monson's expert [Kathleen Bright-Birnbaum] agreed with [Evidence Technician] Paul Mark that any fingerprint taken from [the] scene, would have been identified by technicians because it appeared to be in smeared blood, or on something used in the commission of the homicide." (ECF No. 232, PageID.11170 (emphasis omitted).) And Defendants say that "[t]iles in the area where [Architectural Expert Mark] Monteith now claims the lifts were taken, appear to be smeared in blood. (ECF No. 232, PageID.11171.)

12

But Bright-Birnbaum, Mark, and Monteith were speaking in generalities and acknowledged that they lacked specific information about the location and nature of these prints. (ECF No. 232-8, PageID.11233–11234; ECF No. 232-9, PageID.11241; ECF No. 232-14, PageID.11267.) So Bright-Birnbaum's statement that technicians generally would lift bloody prints does not mean that *these* prints were bloody. (*See* ECF No. 232-9, PageID.11241 (The prints "were from that shower wall. I have no photos to confirm any of that. There were no images reflecting those. . . . they state them there [in the Evidence Technician Report], but there is nothing documenting them otherwise.").) Similarly, just because there was blood at the base of the wall does not mean these prints were lifted from that part of the wall. (ECF No. 232-14, PageID.11267 (Monteith: "I wasn't given any information to go on regarding the height that [the shower-wall prints] were taken from.").) So, based on the evidence provided, Defendants' suggestion that the prints were bloody is purely speculative. (ECF No. 236, PageID.12018.)

Finally, Defendants say that "Monson's prints on the Bathroom Wall and claim that his own prints could have been left before or after the murder, tends to prove that Lewis's prints also could have been left before or after the murder." (ECF No. 232, PageID.11170.) But Defendants never explain what claim this is relevant to, nor do they explain why it matters when Lewis' prints were deposited. And assuming Defendants are making this argument in relation to the *Brady* claim, they will be permitted to make arguments about whether the prints on the toilet-tank lid were in fact exculpatory and prejudice ensued from the non-disclosure. But again, that

13

argument has nothing to do with the shower-wall prints that were not used in the criminal trial to prove Monson's guilt. As explained, the referenced paragraph in the complaint only notes that an officer knew prints that did not match Monson's were found at the crime scene in 1996.

\* \* \* \* \*

In sum, the shower-wall prints have no relevance to Monson's *Brady* or malicious-prosecution claim. And the prints have, at most, minimal relevance to Monson's fabrication-of-evidence claim and to the evaluation of the "relative significance" of all the prints left at the scene.

### B.

As mentioned, even relevant evidence may be excluded if its "probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury . . . or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Start with unfair prejudice. Introducing newly uncovered prints that Monson left near the crime scene invites the jury to speculate that Monson is a confessed murderer who was released from prison on a technicality. *See United States v. Newsom*, 452 F.3d 593, 603 (6th Cir. 2006) ("The tattoo evidence was unfairly prejudicial because it suggested to the jury that Newsom had a hostile, criminal disposition, and a conviction on that basis is obviously improper."). True, this inference is possible based simply on Monson's conviction and release. However, the fact that the shower-wall prints are "new" might cause the jury to give them too much

14

weight. In other words, instead of focusing on the claims at hand, the jury may improperly attempt to reevaluate the state court's decision to release Monson from prison because it did not have this evidence when it granted him a new trial. But this speculation would result not from the "legitimate probative force of the evidence"—which, as discussed, is quite small—but instead would tend to suggest a decision based on a desire not to find for someone who potentially "got away" with murder. *See United States v. Howard*, 621 F.3d 433, 457 (6th Cir. 2010).

For the same reason, the shower-wall prints might also confuse the issues and mislead the jury. The jury will be determining whether Monson has proved the elements of his constitutional and tort claims by a preponderance of the evidence. They are not being asked to evaluate Monson's guilt of the underlying murder on this same lenient standard, but this evidence invites such speculation.[3]

Finally, "Rule 403 'probative value' . . . may be calculated by comparing evidentiary alternatives." *Old Chief v. United States*, 519 U.S. 172, 184 (1997). To the extent that the shower-wall prints show that Monson had access to the bathroom at some point before or during the murder, there are less prejudicial alternatives

---

[3] At a hearing on a motion for sanctions to exclude the same evidence at issue here, Defendants suggested that they did intend to argue that Monson's actual guilt of the underlying murder was a defense to the malicious prosecution claims. (ECF No. 227, PageID.10932–10935); *see, e.g., Bowen v. Borland*, 241 N.W. 201, 202 (Mich. 1932) (finding that actual guilt is a "complete defense" to common-law malicious prosecution); *Wilkins v. DeReyes*, No. CV 02-980, 2010 WL 11646813, at *3 (D.N.M. Oct. 14, 2010) (finding that actual guilt is not a defense to a § 1983 malicious-prosecution claim, but that it was relevant to emotional damages). They did not, however, raise this argument in their response to the motion in limine. (*See generally* ECF No. 232.)

available to establish this fact. These alternatives include Monson's own admission of that fact and the bathroom-mirror print that was known at the time of his prosecution.

Accordingly, the Court concludes that the limited probative value of the shower-wall prints is substantially outweighed by the risk of unfair prejudice, jury confusion, and the needless presentation of cumulative evidence.

### III.

For the foregoing reasons, Monson's motion in limine to preclude defendants from introducing the shower-wall prints (ET #242490) is GRANTED. The Court will not permit any lay or expert testimony related to these prints at trial.

SO ORDERED.

Dated: May 31, 2022

s/Laurie J. Michelson<br>
LAURIE J. MICHELSON<br>
UNITED STATES DISTRICT JUDGE