UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| LAMARR MONSON, <br><br> Plaintiff, <br><br> v. <br><br> JOAN GHOUGOIAN, *et al.*, <br><br> Defendants. | Case No. 18-10638 <br> Honorable Laurie J. Michelson |

**OPINION AND ORDER ON PLAINTIFF'S POST-ORAL-ARGUMENT SUPPLEMENTAL BRIEF IN RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [291]**

In 1996, Christina Brown was killed in the bathroom of an apartment that she sometimes shared with plaintiff Lamarr Monson. Monson "confessed" and was convicted of her murder. But years later —with the discovery of exculpatory evidence and the help of the Michigan Innocence Clinic—a state judge granted Monson a new trial. The prosecutor's office declined to retry Monson, and the state judge then dismissed the case. Monson was released in 2017 after serving more than 20 years in prison.

In 2018, Monson filed this lawsuit, alleging that various Detroit Police Officers (and others) violated his constitutional rights during the murder investigation and trial. After years of motion practice and extensive discovery, the Court ruled on the parties' cross-motions for summary judgment at a hearing on October 28, 2022. (ECF Nos. 292–293.) Many of Monson's claims survived. Defendants appealed. (ECF No. 294.)

But one loose end still needs to be tied up by this Court. At the October 2022 hearing, the Court invited Monson to submit citations to the record to connect a 1996 witness statement from Brown's childhood friend, Cynthia Stewart, to the outcome of Monson's 1997 criminal trial. (ECF No. 292, PageID.22316.) For the reasons explained below, these citations are necessary to sustain Monson's fabrication-of-evidence and coerced-testimony claims against certain Defendants. Monson accepted the Court's invitation and submitted a supplemental brief, and the Defendants responded. (ECF Nos. 291, 296.) (Because the Defendants did not appeal these claims, the Court believes it still has jurisdiction to decide them. *See Krycinski v. Packowski*, 556 F. Supp. 2d 740, 741 (W.D. Mich. 2008) (citing *Yates v. Cleveland*, 941 F.2d 444, 447 (6th Cir. 1991)).

Though the Court has already provided an extensive factual summary of the case (*see* ECF No. 293), a brief summary of the facts related to Cynthia Stewart is in order here.

On January 20, 1996, the day of Brown's murder, the police interrogated and took a statement from Brown's childhood friend, Cynthia Stewart (also known as Paris Thompson). (ECF No. 293, PageID.22349–22350.) Specifically, two of the Defendants in this case, Detroit Police Officers Barbara Simon and Vincent Crockett, were involved in taking her statement, among other unknown officers. (*Id.*) Stewart's statement said that Monson had threatened Brown's life about one month prior to her death, that the two were "boyfriend and girlfriend," and that Monson routinely

carried a knife. (*Id.*) (At the time, the police believed that Brown had been stabbed to death. (*See id.* at PageID.22346.))

About a year later, in March 1997, Stewart was the prosecution's first witness at Monson's criminal trial. (ECF No. 241-4, PageID.12853, 12879.) She testified that she had introduced Monson and Brown three or four months prior to Brown's death. (*Id.* at PageID.12880–12881.) And she said that Monson and Brown lived together, though she denied having ever been to the semi-abandoned apartment building where they allegedly lived. (*Id.* at PageID.12882–12883.) And she said that she had not seen Brown at all during the last month of her life. (*Id.* at PageID.12884.)

Later in the day, Stewart was recalled to the stand. (*Id.* at PageID.12994.) The prosecutor then inquired about Monson's alleged threat to kill Brown. (ECF No. 241-4, PageID.12998.) She asked, "Had Brown been threatened as a result of [a] robbery?" (*Id.*) Stewart replied, "Not that I know of." (*Id.*) At that point, the prosecutor showed Stewart her 1996 statement, which mentioned the robbery and Monson's alleged threat. (*Id.* at PageID.12999.) Only after reading the statement did Stewart testify that Brown "did tell [her] that [Monson] had threatened her after the robbery." (ECF No. 241-4, PageID.12999.) After the court overruled Monson's hearsay objection, Stewart clarified that Monson had threatened to "kill [Brown] if she didn't get out of his face." (*Id.* at PageID.13003.)

At her deposition in this case, Stewart told an entirely different story. As explained in the Court's prior order, Stewart said that she was picked up by the police on the day of Brown's murder, handcuffed, and taken to the police station. (ECF No.

3

293, PageID.22349.) When she arrived there, the officers told her that Brown had been murdered, showed her a clear bag of Brown's blood-stained clothes, and kept asking her "if [she] wanted to go to jail maybe or end up like that, like [her] friend." (*Id.* at PageID.22350.) Brown understood that to mean that the police would be "mad" at her and that Monson might hurt her if she did not cooperate. (*Id.*) She continued, "they told me [Brown] was with . . . Lamarr Monson selling drugs somewhere. I did not even know [Brown and Monson] were together . . . this was all told to me by the[ police]. I did not know that stuff. We had not seen each other for so long. . . . I didn't really know nothing about nothing." (*Id.*) And she denied that the signature on the statement was hers. (*Id.*)

Monson relies on these facts to suggest that his fabrication-of-evidence claims against Simon and Crockett should survive summary judgment. (*See* ECF No. 291.) The Court agrees.

As the Court already discussed, "[i]t is well established that a person's constitutional rights are violated when evidence is knowingly fabricated and a reasonable likelihood exists that the false evidence would have affected the decision of the jury." (ECF No. 292, PageID.22313–22314 (citing *Gregory v. City of Louisville*, 444 F.3d 725, 737 (6th Cir. 2006)).)

There are genuine disputes of material fact as to whether Simon and Crockett knowingly fabricated Stewart's statement. As explained, Stewart testified in this case that the police implicitly threatened her and then fed her the information contained in her statement. (ECF No. 293, PageID.22349–22350.) For his part, Crockett

4

acknowledged that he participated in Stewart's interrogation at Monson's criminal trial, but he said he merely relayed the information that Stewart gave him. (*Id.*; ECF No. 241-13, PageID.14298.) And despite the fact that Simon's signature is on the statement, Stewart did not recall speaking to a female officer that day. (ECF No. 293, PageID.22350.) So a reasonable jury could conclude that Simon and Crockett knowingly fabricated Stewart's statement.

And there is a reasonable likelihood that the fabricated statement affected the decision of the jury. "[T]he relevant question is not whether the fabricated evidence was *shown* to the jury; it is whether the statement *affected* the decision of the jury." *See Jackson v. City of Cleveland*, 925 F.3d 793, 816 (6th Cir. 2019). In *Jackson*, the Sixth Circuit found that a reasonable jury could conclude that a falsified statement affected the decision of the jury "because the statement coerced [a key witness] to testify in conformance with it." *Id.* at 817. The court also noted that the witness "would have faced a real threat of prosecution for perjury had his testimony conflicted with his earlier signed statement." *Id.* The same is true here. Stewart testified at trial that she did not know of Monson ever threatening Brown. But once she was shown her witness statement, she altered her testimony to conform with it. And her belief that the police might be "mad" at her if she did not cooperate in the investigation suggests that she had reason to fear a perjury charge. So, as in *Jackson*, a reasonable jury could conclude that the fabricated statement—which recounted Monson explicitly threatening Brown's life a few weeks before her murder—affected the decision of the jury.

5

Defendants' cursory arguments to the contrary do not alter this conclusion. Defendants argue that "*Jackson* illustrates that a fabrication of evidence claim must be based upon 'evidence' introduced at trial." (ECF No. 296, PageID.22378.) As explained, *Jackson* says just the opposite. *See* 925 F.3d at 816 (noting that the falsified witness statement was introduced in only one of the three plaintiffs' criminal trials and concluding that the statement could still form the basis of a fabrication-of-evidence claim for all three plaintiffs). And Defendants' argument that the prosecutor's habit of interviewing witnesses prior to trial is not relevant here. (ECF No. 296, PageID.22379.) Indeed, that portion of *Jackson* related to a separate way that the statement affected the decision of the jury in that case: the statement affected the prosecutor's decision to bring charges in the first instance. *See Jackson*, 925 F.3d at 816–17 ("If [the officers] had not fabricated [the witness] statement . . . charges would not have been brought, and, of course, a jury that is never empaneled is a jury that does not return a guilty verdict."). But Monson does not make a similar argument here. He only relies on the portion of *Jackson* addressed above, which found that "the falsified statement caused the criminal verdicts because the statement coerced [the witness] to testify in conformance with it." *Id*. at 817. So Defendants' argument on this front is misplaced.

In conclusion, the Court finds that genuine issues of material fact exist with respect to Monson's claim that Simon and Crockett fabricated Cynthia Stewart's witness statement and that the statement affected the jury's decision to convict Monson. And the Court finds that neither Simon nor Crockett are entitled to qualified

6

immunity. *See Jackson v. City of Cleveland*, 925 F.3d 793, 826 (6th Cir. 2019) (holding that the defendant "was on notice in 1975 that it was unlawful for him to fabricate evidence" in the same manner alleged here). So the motion for summary judgment on these fabrication-of-evidence claims is DENIED.

But despite the Court's invitation (ECF No. 292, PageID.22317), Monson made no arguments about his coerced-testimony claims based on these facts (*see generally* ECF No. 291). So the Court sees no reason to revisit its prior decision dismissing those claims. (ECF No. 292, PageID.22317.)

So, with the limitations already noted on the record (*see* ECF Nos. 292–293), the following claims survive: (1) a federal malicious-prosecution claim and a fabrication-of-evidence claim against Crockett; (2) a federal malicious-prosecution claim, a claim for violations of *Brady v. Maryland*, and a fabrication-of-evidence claim against Simon; (3) a federal malicious-prosecution claim, a coerced-confession claim, and a fabrication-of-evidence claim against Ghougoian; and (4) a federal malicious-prosecution claim and a fabrication-of-evidence claim against Braxton.

SO ORDERED.

Dated: December 6, 2022

                                                 s/Laurie J. Michelson
                                                 LAURIE J. MICHELSON
                                                 UNITED STATES DISTRICT JUDGE